**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

**SEP 3 0 2002**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ANDY LUNA & CRISTINA LUNA,<br>Individually and as Next Friend of<br>HECTOR ANDY LUNA, a Minor Child | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | CIVIL ACTION No.   B-02-188 |
| MAGDALENA FLORES, M.D.<br>and BROWNSVILLE OBSTETRICS &<br>GYNECOLOGY, P.L.L.C. | * * * * | |
| Defendants. | * | |

**(OPPOSED)**
**MOTION FOR SUBSTITUTION**
**OF THE UNITED STATES OF AMERICA**
**AS DEFENDANT IN THE STEAD OF MAGDALENA FLORES, M.D.**
**AND MEMORANDUM IN SUPPORT THEREOF**

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America, pursuant to the Federal Tort Claims Act, 28 U.S.C.
2679(d)(2) and 42 U.S.C. 233, moves for an Order substituting the United States as a
Defendant in this cause in the stead of defendant, Magdalena Flores, M.D.  In support of this
Motion, the United States submits the following:

a.    On May 29, 2002, plaintiffs filed their original petition in the 197th Judicial
District, Cameron County, Texas.  In the petition, plaintiffs allege that Dr.
Magdalena Flores, and others, were negligent in providing of medical care and
treatment to Cristina Luna and her son Hector Andy Luna on or about June 11,
2000.

b.    The Federal Tort Claims Act, 28 U.S.C. 1346(b); 2671-2680 (1988) ("FTCA"), as
amended by the Federal Employees Liability Reform and Tort Compensation Act
of 1988, 5 Pub. L. No. 100-694, 102 Stat. 4563 (1988), provides that a suit
against the United States shall be the exclusive remedy for persons with claims
for damages resulting from the negligent or wrongful acts or omissions of federal
employees taken within the scope of their office of employment.  28 U.S.C.
2679(b)(1).  The state law torts alleged in the plaintiffs' petition fall within this
provision.  There are two exceptions to the exclusivity provisions which are

codified at 28 U.S.C. 2679(b)(2). Neither exception applies to these state law claims.

c.   Title 42, U.S.C. Sections 233(a) and (c) specifically extend the FTCA provisions of exclusive remedy, employee immunity and the procedures for removal and substitution of the United States in claims for damages resulting from the negligent or wrongful acts or omissions of employees of the Public Health Service taken within the scope of their office or employment. Section 233(g) provides that certain public health entities receiving federal grants and their employees, are employees of the United States for purposes of the FTCA.

d.   28 U.S.C. 2679(d)(2) provides that upon certification by the Attorney General that a federal employee was acting within the course and scope of her office or employment at the time of the incident out of which the state law claim arises, any civil action arising out of the incident *shall* be deemed an action brought against the United States, and the United States *shall* be substituted as sole defendant with respect to those claims. The Attorney General has delegated certification authority to the United States Attorneys. 28 C.F.R. 15.3 (1993).

e.   At the time of the incidents alleged in the complaint, Magdalena Flores, M.D. was an employee of the Brownsville Community Health Center, an entity receiving federal grant money from the United States Public Health Service pursuant to 42 U.S.C. §§254b, 254c, 256, or 256a. (See Govt's Exhibits "A" and "A-1" –copy of Dr. Flores Contract with the Brownsville Community Health Center and a copy of Dr. Flores Declaration regarding services provided to plaintiff Cristina Luna).

f.   Pursuant to 42 U.S.C. §233(h), the United States Department of Health and Human Services deemed Brownsville Community Health Center and its employees who are physicians, to be employees of the federal government for purposes of coverage under the Federal Tort Claims Act, 28 U.S.C. §2671, et. seq., effective for acts and omissions on and after December 15, 1994. (See Government's Exhibit "B" and "B-1"–copy of the Declaration of Richard G. Bergeron of the Department of Health and Human Services and copies of the deeming letter dated June 30, 1993 and the re-deeming letter dated June 20, 1996).[1]

---

[1] Mr. Bergeron's original declaration was submitted as government's Exhibit "B" to its "Notice of Removal" filed herein.

g.   Michael T. Shelby, United States Attorney for the Southern District of Texas, executed a certification pursuant to the provisions of *28 U.S.C. §2679(d)(1)*, as amended by the Federal Employees Liability Reform and Tort Compensation Act of 1988, *Public Law 100-694*, and of *28 C.F.R. §§15.3 and 50.15*, which certifies that defendant Dr. Magdalena Flores  an employee of the United States Government, and was acting within the scope of her employment as an employee of the United States Government at the time of the alleged conduct made by subject matter of the above-captioned and numbered civil action.[2]

h.   Accordingly, the United States should substituted for defendant Magdalena Flores, M.D., and Dr. Flores should be dismissed from this action. *Mitchell v. Carlson*, 896 F.2d 128, 133-36 (5th Cir. 1990).[3]

WHEREFORE PREMISES CONSIDERED, the United States prays that this Court grant this Motion and substitute the United States as the defendant in the stead of Magdalena Flores, M.D.

Respectfully submitted,

MICHAEL T. SHELBY
UNITED STATES ATTORNEY

NANCY L. MASSO
Assistant United States Attorney
600 East Harrison St., No. 201
Brownsville, TX 78520
Tel:   (956) 548-2554
Fax:   (956) 548-2549
State Bar No. 00800490
Federal I.D. No. 10263

---

[2]Mr. Shelby's original "Certification" was attached as Government's Exhibit "C" to the "Notice of Removal" filed herein.

[3]Following substitution of the United States as defendant, the action shall proceed in the same manner as any action against the government under the Federal Tort Claims Act "and shall be subject to the limitations and exceptions applicable to those actions." *28 U.S.C. §2679(d)(4).*  Plaintiff has been provided with a substitute remedy, but one only within the limits of the FTCA. *Mitchell v. Carlson*, 896 F.2d 128, 134 (5th Cir. 1990).

PROFESSIONAL SERVICES AGREEMENT
BETWEEN
BROWNSVILLE COMMUNITY HEALTH CENTER, INC.
AND
MAGDALENA FLORES, M.D.

This agreement is made this 1st day of February, 2000 by Brownsville Community Health Center Corporation, a Texas non-proft corporation, hereinafter referred to as "BCHC" and MAGDALENA FLORES, M.D., hereafter referred to as CONTRACTEE.

WHEREAS, BCHC maintains through its health centers and off-site facilities; and a variety of Health Care Services for the neighboring Community

WHEREAS, CONTRACTEE is willing to practice his specialty as an independent contractor to BCHC;

NOW, THEREFORE, in consideration of the promises, covenants and agreements hereinafter set forth, to be kept and performed by said parties, it is mutually understood and agreed as follows:

1 . **Professional Services:**

BCHC agrees to contract with CONTRACTEE as a practitioner of Obstetrics and Gynecology, (the "Specialty"). CONTRACTEE agrees to provide specialty services in accordance with the terms of this agreement. CONTRACTEE shall provide medical services to patients who present themselves to the Health Center during its hours of operation regardless of patients' race, creed, color, or sex. In addition, CONTRACTEE will provide "on call coverage," as required by BCHC to serve its patients needs.

CONTRACTEE shall perform procedures appropriate to training and experience, as necessary for patients under care and for which BCHC will bill. CONTRACTEE shall not compete for BCHC patients; if a patient has ever been serviced by BCHC, or is treated at any of BCHC's clinics or satellite offices, he or she shall be considered a BCHC patient/client and all compensation for service shall be due to BCHC. In turn, CONTRACTEE will be compensated pursuant to this agreement as set forth below. Should a BCHC patient seek the services of the CONTRACTEE independently from those services provided at BCHC, the patient will be allowed to do so and said patient will become the patient of the CONTRACTEE under the express condition that patient sign a "Patient acknowledgment form" indicating the change was at patient's sole discretion. This form will be provided by CONTRACTEE at his office and a copy of same will be provided to the clinic upon execution by said patient. Should a prior CONTRACTEE patient seek the services of BCHC, Facility will likewise provide a signed Patient acknowledgement form for CONTRACTEE's records.

2. **Qualifications of Contractee:**

**Independent Contractor Status.** CONTRACTEE agrees and understands that he will be considered an Independent Contractor for purposes of this agreement. It is understood by CONTRACTEE that his actions and duties are wholly independent from those actions of BCHC. BCHC will not be held legally responsible for any actions committed by CONTRACTEE at his independent offices and clinics or outside of those duties described by this agreement.

GOVERNMENT
EXHIBIT
"A"

1

A.  CONTRACTEE warrants that he shall be duly licensed to practice medicine in the State of Texas. and shall maintain a current valid controlled substance registration from the United States Drug Enforcement Administration and from the State of Texas as well as any and other licenses and permits required of their profession by any Texas or Federal Agency.

B.  CONTRACTEE shall maintain medical staff membership and privileges at a hospital as dictated by the needs of BCHC and determined by BCHC.

C.  BCHC will not advertise CONTRACTEE'S name without the prior consent of CONTRACTEE.

### 3. Termination

**A.  Termination by Facility for Cause.**

Facility may terminate the employment of CONTRACTEE "for cause" at any time upon written notice to CONTRACTEE specifying the cause of termination. If terminated pursuant to this Section, compensation due under Section 3 hereunder shall be paid on a prorated basis to the final date worked. For purposes of this Agreement, "for cause" shall mean, but not be limited to, a determination that CONTRACTEE



(a)  has lost or had restricted in any way his license to practice medicine in the State of Texas,

(b)  has had a conviction of a crime involving moral turpitude, including but not limited to fraud theft, or embezzlement;

(c)  has failed or refused to follow reasonable and material written policies or directives as established by Facility;

(d)  has committed acts amounting to gross negligence or misconduct to the detriment of Facility, its affiliates, employees, Contractors, agents or its patients.

(e)  has willfully and persistently failed to attend to his material duties as described herein within this contract.

(f)  has otherwise breached any of the material terms or provisions of this Agreement after ten (10) days written notice thereof.

CONTRACTEE will notify BCHC immediately upon the occurrence of any of the above events in writing as well as with the action CONTRACTEE intends to make to remedy the situation. In the case of physicians resulting in restricted or lost licenses, as well as any restrictions or loss of privileges at any of the designated hospitals or clinics, CONTRACTEE expressly agrees to provide immediate notice to BCHC of such doing along with a complete cessation of said physician's services as to any of CONTRACTEE's or BCHC's patients. CONTRACTEE will be responsible for finding an appropriate qualified physician to continue the care of said patients should such situation be necessary.

**B.** **Termination by either party without cause.**

This agreement may be terminated by either party at any time without cause upon ninety (90) days advance written notice.



i. **Termination with cause.**

This agreement shall automatically terminate without notice, with respect to CONTRACTEE in the event of:

> A. Revocation or suspension of associate physician's medical license to practice in the State of Texas;
>
> B. Death of physician;
>
> C. Adjudication of physician's incompetence or negligence by the internal review committee of any hospital at which physician has staff privileges;
>
> D. Dissolution of the Health Center or part thereof as an operating entity for any reason;
>
> E. Failure of CONTRACTEE to provide satisfactory clinical services as determined BCHC in its sole discretion; and
>
> F. Ineligibility for insurance under BCHC's malpractice plan.

ii. In addition, BCHC may terminate this agreement upon thirty (30) days' notice under certain circumstances with CONTRACTEE including, but not limited to the following:

> A. Impairment of physician's capacity to perform the duties of this agreement, such impairment to be determined by BCHC in its sole discretion.
>

> B. Acts of professional misconduct or dishonesty by physician as determined by BCHC
>
> C. Physician's loss of hospital medical staff privileges or membership. CONTRACTEE shall notify BCHC within twenty-four hours of receiving notification that a physician has loss his/her hospital privileges.
>
> D. Substantial loss of federal grant and/or revenue supporting funds by BCHC or the Health Center.

In the case of termination pursuant to the conditions in this section (III), BCHC will compensate CONTRACTEE for services rendered up until the date of notice. No other sums will be owed under this agreement should this clause be invoked. *Last will act*

4.  **Other Physician Covenants: Services to be provided by Physician:**

 I.    In addition to the services rendered to BCHC patients, CONTRACTEE (or his designee) shall provide services as directed by BCHC Administration, including, but not limited to the following:

    A.    Maintain adequate records of patient care and other activities performed under this agreement;

    B.    Supervise and collaborate with certified nurse midwives, nurse practitioners, physician assistants and others;



    C.    Teach trainees at the support staff level;

    E.    Provide on-call evening, weekend and holiday coverage as scheduled by BCHC;

    F.    Participate in Health Center and community education programs;

 I.    CONTRACTEE shall not, without written permission of BCHC Administration, incur any debts or liabilities in the name of BCHC or Health Center.

 II.   CONTRACTEE shall inform BCHC of any contractual and/or investment interests that it may have or is anticipating with a competing medical practice to BCHC, prior to the execution of this agreement. Thereafter, CONTRACTEE shall inform BCHC of any pending interests at least ninety days prior to the consummation of such interest.

5.  **Scheduling:**

CONTRACTEE agrees to provide medical services to BCHC's patients during hours of operation as determined by BCHC in its sole discretion. CONTRACTEE agrees to work 15 hours per week: not less than 12 hours of clinical time scheduled with patients and a minimum of 3 hours to provide appropriate follow-up, charting, quality assurance and other necessary professional duties as determined by BCHC. CONTRACTEE's clinic hours may include minimums of one evening per week.



It is further understood by both parties that the CONTRACTEE will work as many hours as necessary to fulfill its obligations with BCHC and its patients. Any hours in excess of fifteen are not to be considered overtime and CONTRACTEE will not expect additional pay for those additional hours should they take place.

4

6.     **Accountability:**



In performance of all services under this agreement, CONTRACTEE will be subject to and bound by the law of the State of Texas, the Rules and Regulations of the United States Department of Health and Human Service and policies of BCHC or the Health Center approved by BCHC's Board of Directors and amended from time to time. In addition, CONTRACTEE agrees to comply with rules, regulations, standards and policies of the various licensing and accrediting bodies which have authority over the practice of medicine and the operations of the Health Center and BCHC.

7.     **Insurance:**

BCHC agrees to maintain professional liability insurance coverage for the physician for services rendered under this agreement and in an amount at the sole direction of BCHC. Insurability of the physician *is* a precondition to this contract, without which, it will not take effect- CONTRACTEE warrants to BCHC that it has disclosed all matters which may be cause for uninsurability or incidents of malpractice under review or completed actions or judgements. A copy of the FTCA COVERAGE will be provided upon CONTRACTEE's request. CONTRACTEE further agrees to provide BCHC with a copy of its professional liability insurance naming CONTRACTEE as an insured against any and all acts or omissions that may occur at CONTRACTEE's independent clinics or offices. If requested, CONTRACTEE will provide BCHC with proof of such coverage. Such coverage is a precondition of this contract. Failure to provide such coverage will be considered a breach of this agreement. The existence of coverage, or the determination of whom is to purchase such coverage, is in no way to affect CONTRACTEE's status as independent contractor.

8.     **Compensation:**

A.     BCHC agrees to pay CONTRACTEE a rate of $63,070 per annum payable on a monthly basis in the amount of $5,255.83 on the last business day of each month, for clinical and consult time on-site at BCHC.  In addition, BCHC agrees to pay CONTRACTEE on the last business day of the month, the professional fee of $350 per delivery, for all patients who are insured by third party Payors, Medicaid and Medicare excluding TP30 patients. For the uninsured, or underinsured and indigent patients, BCHC agrees to pay CONTRACTEE a professional fee of $250 per delivery, $350 per delivery shall be paid per delivery should said patient attain TP-30 status under state Medicaid provisions.   Said payments will be made to CONTRACTEE thirty (30) days after receipt of the proper documentation from CONTRACTEE evidencing the treatment and procedures.

*"Documentation" includes all forms and paperwork required by the clinic or the government in order to make claims for payment for performing the necessary services and procedures.*

5

B.  For gynecology procedures performed in the hospital, BCHC agrees to pay CONTRACTEE on the last business day of the month, 50% of the rate collected from third party payors, Medicaid and Medicare. In all cases, BCHC shall confirm the amount of reimbursement or payment at the time of admission from Medicaid, Medicare or third party payor, inform CONTRACTEE by fax and submit a copy of Medicaid, Medicare or third party payors' remittance advice copy with payment to CONTRACTEE to confirm payment level. Such payment by BCHC will be made within thirty (30) days of receipt of said funds from the appropriate agency, provider or third party payors. Such amounts are due to CONTRACTEE if, and only if BCHC receives said sums from the appropriate third parties.



C.  BCHC will bill for all physician's services rendered under the terms of this agreement, including both clinical time on site, consult time including hospital; and all monies collected by BCHC for such physician's services shall become the exclusive property of BCHC The professional fees described above, and benefits described below, constitute the only compensation for services performed under this agreement.

9.  **Benefits:**



BCHC agrees to provide malpractice coverage under FTCA subject to the Bureau of Primary Health Care approval. No other benefits shall be paid on behalf of CONTRACTEE as an independent contractor.

10  **Supplies, Maintenance and Personnel:**



During the term of this agreement, BCHC shall provide and maintain space, equipment, and supplies, as well as the personnel necessary for the proper operation of the Health Center.

11.  **Term:**



Renewal shall be for a term of one (1) year or greater by mutual written consent by both parties. Should this agreement expire before parties enter into a renewal of this agreement, this agreement shall be considered renewed for an additional year and subject to the same terms and conditions contained herein.

12.  **Records:**



CONTRACTEE shall maintain and /or cause to be maintained adequate records of patient care rendered, as well as other records deemed necessary for the proper administration of the Health Center. All such records shall be the property of BCHC and/or the Health Center and shall be treated as confidential, provided that physician may have access to such records as necessary for the rendering of patient care.

6

13.    **Amendments:**

This agreement may be amended or altered in any of its provisions by mutual agreement of the parties hereto. Any such change shall become effective when reduced to writing and signed by both parties or at such time as provided for in the amendment.

14.    **Texas Law:**

This agreement shall be governed by the laws of the State of Texas. In the event any provision of this agreement conflicts with the laws under which it is to be construed, Or if any such provision is held invalid by a court with jurisdiction of the parties, such provision shall be deleted from the agreement and the agreement shall be construed to give effect to the remaining provisions thereof.

15.    **Complete Agreement:**

This agreement supersedes and rescinds any prior written or oral agreements between BCHC and CONTRACTEE. Any amendment hereto must be in writing and signed by the parties hereto:

Executed on this the __13__ day of __March__, 2001.

_____
MAGDALENA FLORES, M.D.
CONTRACTEE

_____
Paula S. Gomez, Executive Director
Brownsville Community Health Center

7



# Brownsville Community Health Center

2137 E. 22nd St.  Brownsville, Texas 78521  956/548-7400  Fax 956/546-2056

### Declaration of Magdalena Flores, M.D.

1.    I, Magdalena Flores, M.D., am an OB-GYN Physician licensed to practice in the state of Texas.

2.    I have been employed by the Brownsville Community Health Center since May 1, 1999.

3.    I have not billed privately for the services provided to Cristina Luna.

4.    I have not received monetary compensation for the services provided to Cristina Luna from any source other than the regular compensation I have received from the Brownsville Community Health Center.

I declare under penalty of perjury that the foregoing is true and correct.

Date this _____25th_____ day of June, 2002

_____
Magdalena Flores, M.D.

GOVERNMENT
EXHIBIT
"A-1"

AN EQUAL OPPORTUNITY EMPLOYER

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

```
_____
Andy Luna & Cristina Luna,    )
Individually And As Next      )
Friend of Hector Andy Luna,   )
Minor Child Catherine Mayes,  )
                              )
                              )
        Plaintiffs,           )
                              )
        v.                    )          Case No.
                              )
Magdalena Flores, M.D.,       )
& Brownsville Obstetrics      )
& Gynecology,                 )
                              )
                              )
        Defendants.           )
_____)
```

DECLARATION OF
RICHARD G. BERGERON

1.  I am an Attorney in the Division of Business and
Administrative Law, Office of the General Counsel, Department of
Health and Human Services (the "Department"). I am familiar with
the official records of administrative tort claims maintained by
the Department as well as with the system by which those records
are maintained.

2.  The Department's Program Support Center has a Claims
Branch that maintains in a computerized database a record of all
administrative tort claims filed with the Department, including
those filed with respect to federally supported health centers
that have been deemed to be eligible for Federal Tort Claims Act
malpractice coverage.

GOVERNMENT
EXHIBIT

- 2 -

3.  As a consequence, if a tort claim had been filed with the Department with respect to Brownsville Community Health Center a record of that filing would be maintained in the Claims Branch's database.

4.  I caused a search of the Claims Branch's database to be conducted and found no record of an administrative tort claim filed by Cristina Luna, Andy Luna, or their authorized representative relating to Brownsville Community Health Center or Magdalena Flores, M.D.

5.  I have also reviewed official agency records and determined that Brownsville Community Health Center was first deemed eligible for Federal Tort Claims Act malpractice coverage effective June 30, 1993, and that its deemed status has continued without interruption since that date.  Copies of the notifications by an Assistant Surgeon General, Department of Health and Human Services, to Brownsville Community Health Center are attached to this declaration as Exhibit 1.

6.  Official agency records also indicate that Magdalena Flores, M. D., was a qualified contractor of Brownsville Community Health Center at all times relevant to the complaint in this case; Dr. Flores therefore has been deemed an employee of the Public Health Service for purpose of this action.

I declare under penalty of perjury that the foregoing is true and correct.   28 U.S.C. § 1746.

- 3 -

Dated at Washington, D.C., this _____ day of

_____, 2002.

RICHARD G. BERGERON
Attorney, Litigation Branch
Business and Administrative Law Division
Office of the General Counsel
Department of Health and Human Services

*cc: Fred*
*Armantina*

FROM : BCHC                 PHONE NO. : 210 544 7859           Jul. 23 1996 03:02P



**DEPARTMENT OF HEALTH & HUMAN SERVICES**
BUREAU OF PRIMARY HEALTH CARE

Public Health Service

Health Resources and
  Services Administration
Rockville MD 20857

JUN 3 0 1993

Ms. Paula Gomez
Executive Director
Brownsville Community Health Center
2137 East 22nd Street
Brownsville, Texas 78520

**GOVERNMENT
EXHIBIT**
"B-1"

Dear Ms. Gomez:

The Bureau of Primary Health Care (BPHC), in accordance with Section 224(h) of
the Public Health Service (PHS) Act, 42 U.S.C. 233(h) as added by the Federally
Supported Health Centers Assistance Act of 1992 (P.L. 102-501), deems the above
named entity to be an employee of the Federal Government for the purposes of
Section 224.  Under Section 224(a), the remedy against the United States provided
under the Federal Tort Claims Act (FTCA) for medical and related functions
performed by commissioned officers or employees of the PHS while acting within the
scope of office or employment, shall be exclusive of any other civil action or
proceeding.  P.L. 102-501 extends this "FTCA coverage" to the grantees that have
been deemed covered under Section 224(h) and certain of their officers, employees,
and contractors, as specified below.

This action is based on the assurances provided on June 3, 1993, with regard to: (1)
implementation of appropriate policies and procedures to reduce the risk of
malpractice, (2) implementation of a system whereby professional credentials,
references, claims history, fitness, professional review organization findings, and
licensure status of its health professionals are reviewed and verified, (3) cooperation
with the Department of Justice (DOJ) in the defense of claims (including access to
all pertinent documents and patient information and records) and actions to assure
against claims in the future, and (4) cooperation with the DOJ in providing
information related to previous malpractice claims history.

All officers, employees, and full-time contractors (minimum 32.5 hours per week) of
this grantee who are physicians or other licensed or certified health care
practitioners and who are providing services under the scope of activities covered by
the project funded through its Section 329 (migrant health centers), Section 330
(community health centers), Section 340 (health services for the homeless), or
Section 340A (health services for residents of public housing) grant(s) are
also deemed to be employees of the Federal Government for the purposes of
Section 224, as are part-time contractors who are licensed or certified providers of

Page 2 - Ms. Paula Gomez

obstetrical services and whose individual medical malpractice liability insurance coverage does not extend to services performed for this grantee. Subrecipients listed as eligible for FTCA coverage by the grantee, will be deemed eligible only for carrying out those grant-related activities designated as being within the scope of their contract.

Accordingly, the Attorney General, through the DOJ, has the responsibility for the defense of the individual and/or grantee for malpractice claims approved for FTCA coverage. Please note that the applicability of the Act to a particular claim or case will depend upon the determination or certification, as appropriate, by the Attorney General that the individual or grantee is covered by the Act and was acting within the scope of employment. Such determination or certification is subject to judicial review. If the claim is subject to FTCA coverage, it must be reviewed initially by the PHS through an administrative claims process. Your cooperation in the handling of the claim (including providing the relevant medical records) will be necessary.

Section 224 is further amended by providing that hospital admitting privileges can not be denied if a covered health professional meets the appropriate professional qualifications, and agrees to abide by the hospital bylaws and the rules, and regulations of the medical staff. These individuals are thus afforded the same treatment as members of the National Health Service Corps with respect to hospital admitting privileges. Hospitals that fail to comply shall be in jeopardy of losing Medicare and Medicaid reimbursements.

The BPHC will be evaluating the implications of FTCA coverage for the payment of malpractice insurance costs under the terms of your grant. As a general rule, BPHC would not allow further charges to the grant for malpractice insurance for services subject to FTCA coverage. However, BPHC recognizes that some insurable risks will remain after the effective date of eligibility for FTCA coverage, including risks covered by malpractice insurance for non-covered providers. These remaining risks may require the purchase of private insurance by the grantee. Furthermore, it is expected that grantees will purchase "tail" insurance coverage for current providers with claims made instead of occurrences policies. Consequently, a grantee that has been deemed eligible for FTCA coverage should not cancel its current private malpractice insurance policies until these "gap" coverage requirements have been identified and policies secured.

The BPHC will consider allowing the grantee to continue to purchase its current malpractice insurance where the grantee can demonstrate that: (1) this is necessary to maintain the current scope of services and patient care activities and (2) the cost of such insurance is less than the cost of the insurable risks that remain after FTCA coverage is in effect, i.e., gap coverage.

Furthermore, BPHC will examine your request for charging to your grant the cost of "tail" insurance, if your previous malpractice coverage was for claims made, rather

FROM : BCHC                          PHONE NO. : 210 544 7859          Jul. 23 1996 03:03

Page 3 - Ms. Paula Gomez

than occurrences. Here too, we will consider the extent to which the cost of tail
insurance exceeds the cost of the present malpractice insurance, in deciding which
form of insurance will be an allowable expense under the grant.

The effective date of eligibility for FTCA malpractice coverage is June 30, 1993.
FTCA coverage is only applicable to acts or omissions occurring after this effective
date and before January 1, 1996, for the scope of activities covered by the grant
funded project.

For further information please contact Dr. Fred Pintz, Region VI FTCA
Coordinator, at (214) 767-6547.

Sincerely yours,

Marilyn H. Gaston, M.D.
Assistant Surgeon General
Director



**DEPARTMENT OF HEALTH & HUMAN SERVICES**
BUREAU OF PRIMARY HEALTH CARE

Public Health Service

June 20, 1996

Health Resources and
Services Administration
Bethesda MD 20814

Ms. Paula S. Gomez
Executive Director
Brownsville Community Health Center
2137 East 22nd Street
Brownsville, Texas 78521

Reference: Malpractice Liability Coverage

The Bureau of Primary Health Care (BPHC), in accordance with Section 224(h) of the Public
Health Service (PHS) Act, 42 U.S.C. 233(h) as amended by the Federally Supported Health
Centers Assistance Act of 1995 (Pub.L. 104-73), deems the above named entity to be an
employee of the Federal Government, effective June 23, 1996, for the purposes of Section 224.
Section 224(a) provides liability protection under the Federal Tort Claims Act (FTCA) for
damage for personal injury, including death, resulting from the performance of medical, surgical,
dental, and related functions and is exclusive of any other civil action or proceeding.
This "FTCA coverage" is applicable to deemed entities and their including officers, governing
board members, employees, and contractors who are physicians or other licensed or certified
health care practitioners working full-time (minimum 32.5 hours per week) or part-time
providing family practice, general internal medicine, general pediatrics, or
obstetrical/gynecological services.

Section 224 further provides that hospital admitting privileges cannot be denied on the basis of
having malpractice coverage under the FTCA, if a covered health care professional meets the
appropriate professional qualifications, and agrees to abide by the hospital bylaws and the rules,
and regulations of the medical staff. Moreover, managed care plans are required to accept FTCA
as meeting whatever malpractice insurance coverage requirements such plans may require of
contracting providers. Hospitals and managed care plans that fail to comply shall be in jeopardy
of losing Medicare and Medicaid reimbursements.

In addition, FTCA coverage is comparable to an "occurrence" policy without a monetary cap.
Therefore, any coverage limits that may be mandated by other organizations are met. For
example, a $1.0 million each claim/$3.0 million aggregate occurrence is met since FTCA would,
as appropriate, provide for the payment to a plaintiff of any damages awarded as a result of a
judgment or a settlement approved by the Attorney General, sums in excess of this amount.

For further information, please contact Lana Jeng, M.D., Regional FTCA Coordinator, HRSA
Field Office, Dallas, Texas at (214) 767-3942.

Sincerely yours,

Marilyn H. Gaston, M.D.
As      General
D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ANDY LUNA AND CRISTINA LUNA | * | |
| Individually and As Next Friend of | * | |
| HECTOR ANDY LUNA, Minor Child, | * | |
|      Plaintiffs, | * | |
| | * | |
| v. | * | CIVIL ACTION No. |
| | * | |
| MAGDALENA FLORES, M.D., | * | |
| and BROWNSVILLE OBSTETRICS & | * | |
| GYNECOLOGY, P.L.L.C., | * | |
|      Defendants. | * | |

## CERTIFICATION OF SCOPE OF EMPLOYMENT
## UNDER 42 U.S.C. §233(c) and 28 U.S.C. §2679(d)

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America, by and through Michael T. Shelby, United States Attorney

for the Southern District of Texas, files this its Certification of Scope of Employment Under 42

U.S.C. §233(c) and 28 U.S.C. §2679(d).   Pursuant to the provisions of 42 U.S.C. §233(c) and

28 U.S.C. §2679(d), and by virtue of the authority vested in me by the Attorney General under

28 C.F.R. §15.3, I hereby find, on the basis of the information now available with respect to the

incident alleged in the complaint, that defendant, Magdalena Flores, M.D. was an employee of

the Brownsville Community Health Center, an entity receiving federal grant money from the

United States Public Health Service pursuant to 42 U.S.C. §§254(b), 256, or 256a, and that

Brownsville Community Health Center  was deemed by the Department of Health and Human

Services pursuant to 42 U.S.C. §233(h), eligible for coverage under the Federal Tort Claims Act

effective June 23, 1996.  Accordingly, I certify that Magdalena Flores, M.D. was acting within

the scope of her employment with Brownsville Community Health Center at the time of the


GOVERNMENT
EXHIBIT
"C"

incident alleged in the complaint, and that pursuant to 42 U.S.C. §2339(g), Magdalena Flores,

M.D. is deemed to be an employee of the United States for Federal Tort Claims Act purposes

for those negligent acts alleged in the complaint herein.

DONE on this the 11th day of _____September_____, 2002.

_____
MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

**Certificate of Consultation**

On September 27, 2002, I contacted Plaintiffs' Attorney, Peter Zavaleta. Mr. Zavaleta advised that he opposed this motion.

On September 27, 2002, I contacted Defendant Brownsville Obstetrics and Gynecology, P.L.L.C. attorney, Ricardo Adobatti. He does not oppose this motion.

September 30, 2002
Date

NANCY L. MASSO
Assistant United States Attorney


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the true and foregoing "Motion For Substitution United States of America As Defendant In the Stead of Magdalena Flores, M.D. and Memorandum in Support Thereof" was mailed via certified mail, return receipt requested to the following:

Mr. Peter M. Zavaletta
603 E. St. Charles
Brownsville, Texas 78520

Mr. Ricardo M. Adobatti
Attorney and Counselor at Law
134 East Price Road
Brownsville, Texas 78521

September 30, 2002
Date

NANCY L. MASSO
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

ANDY LUNA & CRISTINA LUNA,      *
Individually and as Next Friend of       *
HECTOR ANDY LUNA, a Minor Child    *
                                     *

Plaintiffs,                     *

v.                                *     CIVIL ACTION No.   B-02-188

MAGDALENA FLORES, M.D.         *
and BROWNSVILLE OBSTETRICS &   *
GYNECOLOGY, P.L.L.C.           *

Defendants.                 *

## ORDER GRANTING UNITED STATES OF AMERICA'S
## MOTION FOR SUBSTITUTION IN THE STEAD OF MAGDALENA FLORES, M.D.

The United States has filed a Motion for Substitution of the United States as defendant

in place of Magdalena Flores, M.D. with respect to the state law causes of action in the

complaint against Dr. Flores, and others.

IT IS HEREBY ORDERED that pursuant to the provisions of 28 U.S.C. 2679 and 42

U.S.C. 233 the United States be substituted as defendant with respect to the state law causes

of action alleged in the complaint against Magdalena Flores, M.D., with regard to the incident

alleged in the complaint, and that the caption be amended accordingly.

SIGNED on this the __ day of _____, 2002.

_____
Presiding Judge
United States District Judge